# In the United States Court of Federal Claims

Nos. 21-1116, 21-1118, 21-1119
(Filed Under Seal: March 13, 2024)
(Reissued for Publication: April 1, 2024)[1]

```
*************************************
CONNECTICUT YANKEE ATOMIC          *
POWER COMPANY,                     *
                                   *
              Plaintiff,           *
                                   *
         and                       *
                                   *
MAINE YANKEE ATOMIC POWER          *
COMPANY,                           *
                                   *
           Consolidated Plaintiff, *
                                   *
         and                       *
                                   *
YANKEE ATOMIC ELECTRIC             *
COMPANY,                           *
                                   *
           Consolidated Plaintiff, *
                                   *
         v.                        *
                                   *
THE UNITED STATES,                 *
                                   *
              Defendant.           *
*************************************
```

*Lucus A. Ritchie*, Pierce Atwood LLP, Portland, ME, counsel for Plaintiffs. With whom were *Katherine S. Kayatta* and *Cameron Goodwin*, of counsel.

*Daniel B. Volk*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom were *Igor Helman*, *Margaret J. Jantzen*, and *Elinor J. Kim*, U.S. Department of Justice, Civil Division, of counsel, and *Brighton Springer*, Office of the General Counsel, U.S. Department of Energy, of counsel.

---

[1] This Memorandum Opinion and Order was filed under seal on March 13, 2024, *see* [ECF 115], in accordance with the Protective Order entered on October 12, 2021, *see* [ECF 21]. The parties were given until March 27, 2024, to propose redactions. The parties filed a joint status report on March 29, 2024, stating that no redactions were needed. [ECF 117] at 2. Accordingly, the Court reissues this Memorandum Opinion and Order without redactions.

**MEMORANDUM OPINION AND ORDER**

In this consolidated action, plaintiffs Connecticut Yankee Atomic Power Company, Maine Yankee Power Company, and Yankee Atomic Electric Company (collectively, "the Yankees") seek damages from the United States for partial breach of contract.[2] Before the Court are the Yankees' motion to compel and the government's contingent motion to compel. [ECFs 63, 68]. For the reasons stated below, the Court **GRANTS-IN-PART and DENIES-IN-PART** the Yankees' motion and **GRANTS-IN-PART and DENIES-IN-PART** the government's motion.

I.    BACKGROUND

In their motion to compel, the Yankees argue that "[t]he government should be compelled to reveal the basis upon which it disputes that $135 million of the Yankees' claimed costs are recoverable." Pls.' Mot. to Compel Disc. Resps. [ECF 63] at 13.[3] According to the Yankees, there can be no dispute that the government's reason for taking the position that the majority of damages sought by the Yankees—$135 million out of $148 million—are not recoverable is relevant under Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC"). *Id.* at 14. The Yankees further contend that the government's response to Interrogatory No. 1 is insufficient in that it fails to provide any information about the government's defenses, thereby preventing the Yankees from properly preparing for trial. *Id.* at 14-16; *see also id.* at 15 ("Such a withholding, if allowed, would constitute a 'trial by ambush' and would be directly contrary to the discovery rules and the principles underlying the mutual exchange of information required before trial."). Lastly, the Yankees take issue with the government's contention that they have not met their burden of demonstrating that the costs are recoverable.[4] *Id.* at 16. The Yankees assert that they have produced detailed spreadsheets and accounting records categorizing every expense underlying their claimed costs. Pls.' Reply [ECF 73] at 9.

The government counters that, by seeking responses to 54,126 line-items in Interrogatory No. 1, the Yankees violated the twenty-five-interrogatory limit in RCFC 33(a)(1). [ECF 68] at 23. Further, the government argues that while contention interrogatories are not prohibited, the Yankees cannot use them to obtain a narrative account of the government's case. *Id.* at 24-25. Lastly, if the Court grants the Yankees' motion to compel further responses to Interrogatory No. 1, the government requests that the Court compel the production of emails previously requested in its Request for Production Nos. 40 through 44, wherein it sought the emails of all the Yankee

---

[2] For a more detailed history of the dispute, please see *Connecticut Yankee Atomic Power Company v. United States*, 2024 WL 706001 (Fed. Cl. Feb. 7, 2024), the Court's Reported Opinion and Order granting the Yankees' motion for partial summary judgment and denying the government's cross-motion for summary judgment.

[3] Originally, the Yankees also moved to compel the government to designate an RCFC 30(b)(6) witness to address various topics. [ECF 63] at 5. In its response, the government sought protection under RCFC 26. Def.'s Resp. [ECF 68] at 31. However, on August 31, 2023, the Yankees withdrew that portion of their motion. Pls.' Notice [ECF 101] at 1-2. Thus, the Court need not consider either party's arguments on the issue.

[4] The Yankees describe these costs as including, "without limitation, costs for labor, contracted work, insurance, materials and supplies, security and surveillance, utilities, regulatory, oversight, fees, taxes, and other costs required for the Yankees' continued corporate existence and extended storage of their [spent nuclear fuel ("SNF")]. [ECF 63] at 8.

executives identified in the Yankees' "initial disclosures as the witnesses on whose testimony they [would] rely in support of their claims." *Id.* at 27. The government asserts that the Yankees have produced a fraction of the responsive emails. *Id.*

## II.    LEGAL STANDARDS

Under RCFC 26(b)(1),[5] parties are permitted to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." RCFC 33 addresses the use of interrogatories. Under RCFC 33(a)(1), "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Further, under RCFC 33(a)(2), a party may propound written interrogatories as long as they "relate to any matter that may be inquired into under RCFC 26(b)."

Generally, "discovery allows the plaintiff to develop facts to support the theory of the complaint and allows the defendant to develop facts to support its defenses. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). In addition, "discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *Id.* Whether the responding party is the plaintiff or the defendant, it "must provide true, explicit, responsive, complete, and candid answers . . . directly and without evasion in accordance with information that [such] party possesses after due inquiry." *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 132 (2009) (internal quotation marks and citation omitted).

However, if the responding party's answers are insufficient, the propounding "party may[, under RCFC 37(a)(1),] move for an order compelling disclosure or discovery." In any event, RCFC 37 is "designed to encourage or secure compliance with the discovery rules, not to reward a party prevailing on a motion to compel." *Council for Tribal Emp. Rts. v. United States*, 110 Fed. Cl. 244, 248 (2013). Further, in acting on a motion to compel, "the court exercises broad discretion, guided by the court's rules." *New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 820 (2015); *see Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc).

## III.    DISCUSSION

The Yankees dispute the sufficiency of the government's response to the Yankees' Interrogatory No. 1, a contention interrogatory that asks the following:

---

[5] "[T]o the extent permitted by this court's jurisdiction, [the RCFC] must be consistent with the Federal Rules of Civil Procedure . . . ." RCFC 83(a).

> If you contend that any cost listed in the Claimed Cost Submittals is unrecoverable because it is not a cost incurred to reasonably operate and maintain Plaintiffs' SNF storage facilities as a result of DOE's partial breach of the Standard Contract, identify each such cost by means of reference to (a) the Audit Order Number associated with the disputed cost, and (b) the dollar amount in dispute, and state the basis for your contention.

[ECF 63-1] at 79. The government responded:

> Defendant objects to this interrogatory as beyond the permissible scope of interrogatories under Rule 33 of the Rules of the United States Court of Federal Claims (RCFC). To begin with, by asking about thousands of claimed costs, this request exceeds RCFC 33(a)(1)'s 25-interrogatory limitation. The request also unreasonably asks us to catalogue much of our defense regarding plaintiffs' claims, which is unduly burdensome and not an appropriate use of interrogatories. Nor is it an appropriate stage of this case to seek this information. Discovery is currently underway, and we continue to attempt to review plaintiffs' claims, notwithstanding the parties' disagreements regarding production of documents. We object to plaintiffs' effort to require us to provide our position on all of plaintiffs' many claimed costs before we have completed our review of the facts surrounding the incurrence of those costs. To date, plaintiffs have produced very little of the email documentation that we consider critical in evaluating the claimed costs and which we have been requesting for approximately a year. Plaintiffs should not expect that they can withhold documentation that we feel we need to review the claimed costs, and then be relieved of their burden of proof. This interrogatory essentially asks—inappropriately—whether we contend that plaintiffs have failed to meet a burden of proof that plaintiffs carry, before plaintiffs have even attempted to satisfy their burden. Accordingly, subject to and without waiving the foregoing objections, we identify in response to this interrogatory all costs presented by plaintiffs, with the basis for our contention being the same for each cost: plaintiffs have not met their burden to demonstrate that the cost was "incurred to reasonably operate and maintain Plaintiffs' SNF storage facilities as a result of DOE's partial breach."

*Id.* at 79-80. Despite initially objecting to the interrogatory, the government later provided the Yankees with a list of costs that were not disputed. [ECF 63-1] at 89-107. The government also stated the following:

> [W]e continue to identify the remainder of plaintiffs' claimed costs in response to plaintiffs' Interrogatory No. 1, with the basis for our

4

> contention being the same for each cost: plaintiffs have not met their burden to demonstrate that the cost was "incurred to reasonably operate and maintain Plaintiffs' SNF storage facilities as a result of DOE's partial breach."

*Id.* at 90.

Interrogatory No. 1 seeks information relevant to the Yankees' presentation of damages and the government's theories of defense, specifically whether and why the government contends that the Yankees' claimed costs are unrecoverable. However, as worded, the interrogatory is overly broad and unduly burdensome. It would not be unduly burdensome for the government to respond to the interrogatory if the list of costs was subdivided into broad categories, as opposed to more than 50,000 line items. To that end, the government shall respond to the interrogatory using the categories identified by the government's expert, Jonathan Couchman, in his report. *See* [ECF 63-1] at 88 (noting that Mr. Couchman previously identified "30+ categories of costs" in his expert report).

Because the Court does not deny the Yankees' motion to compel further responses to Interrogatory No. 1, the Court must also resolve the government's contingent motion to compel the production of "work emails of five Yankee executives." [ECF 63-1] at 90. The government asserts that the Yankees "still have only produced a small fraction of the responsive emails that they have acknowledged are within their possession." [ECF 68] at 27. According to the government, "the number of emails is a consequence of the scope of plaintiffs' roughly $150 million in claims over a five-year period, and not some overbreadth in [its] request." *Id.* The government argues that it needs these emails to evaluate "plaintiffs' claimed costs because, unlike non-descript invoices, the emails contain the Yankees' substantive discussions regarding their decisions to incur the costs claimed in this case." *Id.*

Initially, the government sought the production of "'all email correspondence' from the five Yankee executives identified in the Yankees' initial disclosures, over a five-year period, without limitation for subject matter." Joint Status Report [ECF 34] at 4-5. Unsatisfied with the Yankees' response, the government thereafter requested that plaintiffs produce "all work emails sent or received during the claim period by [the five Yankee executives that they identified in their initial disclosures] to the extent they relate to work for which plaintiffs seek compensation in this case." [ECF 68] at 18-19. Following a second unsatisfactory response by the Yankees, the government proposed the use of various search terms in relation to the discovery of the executives' emails. *Id.* at 19. Although the Yankees complained that the search terms yielded too many results, they ultimately agreed to provide the government with a list of emails sent by two executives during the claim period.[6] *Id.* The government reviewed the list and chose certain emails for production.[7] *Id*. Although the Yankees contend that they satisfied their discovery

---

[6] The Yankees agreed to provide a list of emails sent by Wayne Norton and Todd Smith. [ECF 68] at 19; *See* [ECF 63-1] at 24 (Request for Production No. 40: Mr. Norton); *id.* at 25 (Request for Production No. 41: Mr. Smith).

[7] According to the government, "the Yankees produced most of the emails that we[re] marked from that limited subset." [ECF 68] at 19.

obligation by producing the emails of these two executives, the government argues that its request for production remains outstanding. *Id*. at 19, 27-28.

Insofar as the emails of the remaining three Yankee executives relate to the costs claimed by the Yankees, the information sought is relevant to the government's defense. Therefore, as the Yankees did before, they shall produce a list of emails responsive to Request for Production Nos. 42-44, using the search terms previously identified by the government. *See* [ECF 63-1] at 26 (Request for Production No. 42: Carla M. Pizzella); *id.* at 27 (Request for Production No. 43: Timothy Conry); *id.* at 28 (Request for Production No. 44: Frances Skypeck). The government shall then identify the emails it seeks, and the Yankees shall produce them.

## IV.    CONCLUSION

Accordingly, the Yankees motion to compel, [ECF 63], is **GRANTED-IN-PART and DENIED-IN-PART**, and the government's contingent motion to compel, [ECF 68], is **GRANTED-IN-PART and DENIED-IN-PART**. The Yankees **SHALL, by April 15, 2024**, produce a list of emails responsive to Request for Production Nos. 42-44, using the search terms previously identified by the government. In response, the government **SHALL, by April 29, 2024**, identify the emails is seeks, and the Yankees **SHALL, by May 13, 2024**, produce the documents. Following the government's receipt of the relevant emails from the remaining three Yankee executives, the government **SHALL, by June 10, 2024**, respond to Interrogatory No. 1 using the categories identified by Mr. Couchman in his expert report. The Court will contact the parties to schedule a post discovery conference to set dates for further proceedings in accordance with Appendix A of the Rules of the United States Court of Federal Claims.

The Court denies the Yankees' request that the Court order the government to pay its reasonable expenses in connection with its motion to compel pursuant to RCFC 37(a)(5). *See* [ECF 63] at 21. RCFC 37(a)(5)(C) states that "[i]f the motion is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The Court does not view apportionment as warranted in this instance.

Some information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order [ECF 21] entered on October 12, 2021. Accordingly, the Memorandum Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE on or before March 27, 2024**, a joint status report that: identifies information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz  
THOMPSON M. DIETZ, Judge